Stephen R. Smerek (SBN: 208343)
ssmerek@winston.com
Stephanie M. Leonard (SBN: 288061)
sleonard@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

Monique N. Bhargava (admitted *pro hac vice*)
mabhargava@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone:  (323) 559-5600
Facsimile:   (323) 558-5700

Attorneys for Defendants
RUBIN POSTAER AND ASSOCIATES
and AMERICAN HONDA MOTOR CO., INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SACHIKO MUROMURA,<br><br>            Plaintiff,<br><br>      v.<br><br>RUBIN POSTAER AND ASSOCIATES, a California corporation, AMERICAN HONDA MOTOR CO., INC., a Delaware Corporation,<br><br>            Defendants. | **Case No. CV 12-9263-DDP (AGRx)**<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    September 16, 2013<br>Time:   10:00 a.m.<br>Place:   Courtroom 3 (Los Angeles)<br>Before: Hon. Dean D. Pregerson<br><br>[Proposed Order Filed Herewith] |

TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that, on September 16, 2013 at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 3 of the above-entitled court, located at 312 N. Spring Street, Los Angeles, California, Defendants Rubin Postaer and Associates and American Honda Motor Co., Inc. will and hereby do move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,[1] to dismiss with prejudice Plaintiffs' First Amended Complaint for failure to state a claim upon which relief can be granted.

This Motion is brought on the grounds that Plaintiffs' First Amended Complaint fails to state a claim against Defendants upon which relief can be granted pursuant to Rule 12(b)(6).

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, Plaintiffs' First Amended Complaint, Rule 12(b)(6), all of the pleadings and papers filed herein, and on such additional evidence and argument as the Court may elect to consider at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 2, 2013.

Dated: August 9, 2013          WINSTON & STRAWN LLP

By: /s/ Stephen R. Smerek
Stephen R. Smerek
Monique N. Bhargava
Stephanie M. Leonard
Attorneys for Defendants
RUBIN POSTAER AND ASSOCIATES
and AMERICAN HONDA MOTOR CO., INC.

---

[1] All further statutory references are to the Federal Rules of Civil Procedure unless otherwise noted.

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND .................................................................................2

III. LEGAL DISCUSSION ..........................................................................................3

    A. Legal Standard ............................................................................................3

        1. Rule 12(b)(6) and Rule 8 ..................................................................3

        2. Copyright Infringement ....................................................................4

    B. Plaintiffs' Claim for Direct Copyright Infringement Must Be Dismissed Because Plaintiffs Fail To State A Claim Upon Which Relief May Be Granted ..........................................................................................5

        1. Plaintiffs Continue To Only Allege Defendants Infringed Upon Non-Protectable Elements of Their Artwork .........................5

        2. The Identified Elements of Plaintiffs' Artwork Are Not Virtually Identical Or Substantially Similar To Defendants' Advertisements ..................................................................................9

    C. Because Plaintiffs' Direct Copyright Infringement Claim Must Be Dismissed, the Remainder of the Complaint Should Be Dismissed........13

IV. CONCLUSION .....................................................................................................14

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A & M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ........................................................................... 13

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ....................................................................... 10, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 3

*Associated Gen. Contractors v. Calif. State Council of Carpenters*,
   459 U.S. 519 (1983) ............................................................................................ 4

*Aurora World, Inc. v. Ty Inc.*,
   719 F. Supp. 2d 1115 (C.D. Cal. 2009) .............................................................. 9

*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1990) .............................................................................. 4

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................ 3, 4

*Cavalier v. Random House, Inc.*,
   297 F. 3d 815 (9th Cir. 2002) ..................................................................... 4, 5, 9

*Das v. WMC Mortg. Corp.*,
   No. C10-0650-PSG, 2011 WL 2847412 (N.D. Cal. June 8, 2011) .................... 3

*Dave Grossman Designs, Inc. v. Bortin*,
   347 F. Supp. 1150 (N.D. Ill. 1972) ..................................................................... 8

*Erickson v. Blake*,
   839 F. Supp. 2d 1132 (D. Or. 2012) ............................................................... 5, 6

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
   499 U.S. 340 (1991) ........................................................................................ 4, 5

*Funky Films, Inc. v. Time Warner Entm't Co.*,
   462 F. 3d 1072 (9th Cir. 2006) ........................................................................... 4

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Games of Ariz., Inc. v. PV Onsite*,
  561 F.3d 983 (9th Cir.2009) ........................................................................................5

*Harper & Row, Publishers, Inc. v. Nation Enter.*,
  471 U.S. 539 (1985) .....................................................................................................5

*Idema v. Dreamworks, Inc.*,
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) .....................................................................10

*Kennedy v. Paramount Pictures*,
  No. 12cv372-WQH, 2013 WL 1285109 (S.D. Cal. Mar. 29, 2013) .....................5

*Mandeville-Anthony v. The Walt Disney Co.*,
  No. CV 11-2137-VBF, 2012 WL 4017785 (C.D. Cal. July 28, 2012) ...............5

*Mattel, Inc. v. MGA Entm't, Inc.*,
  616 F.3d 904 (9th Cir. 2010) ..................................................................................5, 9

*Mercado Latino, Inc. v. Indio Prods., Inc.*,
  No. CV 12-01027 DDP, 2013 WL 2898224 (C.D. Cal. June 12, 2013) ..............4

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) .......................................................................................3

*Papasan v. Attain*,
  478 U.S. 265 (1986) .....................................................................................................3

*Probity Ins. Servs., Inc. v. United Agric. Benefit Trust*,
  No. 10-CV-3500-PSG, 2011 WL 1936581 (N.D. Cal. May 20, 2011) ................3

*Satava v. Lowry*,
  323 F. 3d 805 (9th Cir. 2003) ..........................................................................passim

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .......................................................................................3

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
  667 F.3d 1022 (9th Cir. 2011) ..................................................................................13

*Wild v. NBC Universal, Inc.*,
  788 F.Supp. 2d 1083 (C.D. Cal. 2011), *affirmed by*, No. 11-56065, 2013 WL
  750655 (9th Cir. Feb. 28, 2013) .............................................................................4, 9

*Wright v. Gen. Mills*,
  No. 08cv1532, 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ..............................3

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

**STATUTES**

17 U.S.C. § 102(b) ........................................................................................5, 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2) ...........................................................................................3

Fed. R. Civ. P. 12(b)(6) ..............................................................................1, 3, 14

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' First Amended Complaint for copyright infringement against Defendants fails as a matter of law.  Although Plaintiffs were given ample opportunity and direction as to what was required to sufficiently plead a claim of copyright infringement, in their second attempt to state a cause of action, Plaintiffs demonstrate that they do not have a viable claim as they continue to claim protection over non-copyrightable subject matter—namely the natural properties of ferrofluid. As such Plaintiffs again fail to state a plausible copyright claim. Plaintiffs' lawsuit must be dismissed with prejudice because granting the type of protection Plaintiffs request inappropriately extends the reach of copyright law and would violate the fundamental principles of copyright law.

Copyright law only affords protection for original, expressive elements and the selection and arrangement of unprotected elements in a work. Because the range of expression with the use of ferrofluid is limited by how ferrofluid naturally reacts in response to magnets, the copyright protection over the protected elements of Plaintiffs' work is exceedingly thin. Once the unprotected elements of Plaintiffs' work are filtered out, it is apparent that Plaintiffs' claims of copyright infringement cannot withstand a motion to dismiss because Plaintiffs do not identify ***any protected elements*** of their work that are substantially similar—let alone virtually identical—to Defendants' advertisements. Thus, given Plaintiffs repeated failure to allege any facts showing that Defendants copied protected elements of their Artwork, it is clear that what Plaintiffs really seek in this lawsuit is to block the use of ferrofluid as an artistic medium. However, copyright law does not protect ideas, and it cannot be used so broadly as to preclude all artistic expression in a particular medium.

Therefore, Plaintiffs' First Amended Complaint against Defendants must be dismissed with prejudice for failure to state a claim under Rule 12(b)(6).

## II. FACTUAL BACKGROUND

Plaintiffs Sachiko Muromura and Minako Takeno (collectively "Plaintiffs") allege that Defendants Rubin Postaer and Associates ("RPA") and American Honda Motor Co., Inc. ("Honda") (RPA and Honda together, "Defendants") infringed upon their artwork "Protrude, Flow 2001" ("Artwork"). (*See generally*, First Amended Complaint ("FAC" or the "Amended Complaint").)

As alleged in the Amended Complaint, Plaintiffs are artists who, among other things, through the use of ferrofluid and magnets, have created images that are projected onto a screen by means of a video camera. (FAC ¶¶ 8-9.) RPA is an advertising agency that created advertisements on behalf of its client, the Acura Division of Honda. (FAC ¶¶ 3, 12.)

In October 2010, Plaintiff Muromura contacted Defendants and asked whether her Artwork was featured in advertising for Acura. (FAC ¶ 15.) Defendants told Plaintiff Muromura that her Artwork was not used, explaining that "ferrofluid as an artistic medium is rapidly increasing." (FAC ¶ 17.)

Despite such reassurances from Defendants, Plaintiffs filed this lawsuit, alleging Defendants' advertisements constituted "copies" of their Artwork. Plaintiffs identify four advertisements made by Defendants that allegedly infringe on Plaintiffs' copyright: (1) an Acura Still Photo Campaign; (2) an Advanced Engineering Insights Video; (3) an Oil Shell Video; and (4) an Acura Oil Commercial. (*See generally* FAC.) Plaintiffs allege that Defendants infringed upon certain elements of their Artwork—specifically, ferrofluid creating a "pattern of spikes" in response to a magnet, (FAC ¶¶ 30-37, 58-60), the "reflective property of ferrofluid," (FAC ¶¶ 37, 41, 58-59), ferrofluid rising into a column in response to an overhead magnet, (FAC ¶¶ 42, 58-60), and a "pool of ferrofluid" when a magnet is not present. (FAC ¶¶ 37-38, 43, 45, 58-59.) However, these elements of Plaintiffs' Artwork are not elements of original expression, rather they are the result of the natural properties of ferrofluid and thus not subject to copyright protection.

## III. LEGAL DISCUSSION

### A. Legal Standard

#### 1. Rule 12(b)(6) and Rule 8

Rule 8(a)(2) requires a civil complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). This standard demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Probity Ins. Servs., Inc. v. United Agric. Benefit Trust*, No. 10-CV-3500-PSG, 2011 WL 1936581, at *2 (N.D. Cal. May 20, 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, "a plaintiff's obligation to provide 'grounds' of his 'entitle(ment) to relief' requires more than labels and conclusions." *Das v. WMC Mortg. Corp.*, No. C10-0650-PSG, 2011 WL 2847412, at *1 (N.D. Cal. June 8, 2011) (quoting *Twombly*, 550 U.S. at 555).

A complaint is subject to dismissal if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[L]abels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient to state a cognizable claim and the plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678. In order to survive a motion to dismiss, "the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Wright v. Gen. Mills*, No. 08cv1532, 2009 WL 3247148, at *5 (S.D. Cal. Sept. 30, 2009); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). While allegations are generally accepted as true on a motion to dismiss, conclusory allegations are not. *Papasan v. Attain*, 478 U.S. 265, 286 (1986); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory."). The Supreme Court has made it clear that "a complaint attacked by a Rule 12(b)(6) motion

to dismiss does not need detailed factual allegations," but it still ***must plead facts***, and must do so sufficiently "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (emphasis added).  If the facts alleged cannot form the basis for relief under a legal theory, dismissal is proper. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  Further, a court need not assume that a plaintiff can prove facts different from those he or she has already alleged and, where appropriate, need not grant leave to amend. *Associated Gen. Contractors v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Here, Plaintiffs' First Amended Complaint does not meet the standards articulated above.

### 2. Copyright Infringement

To state a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F. 3d 1072, 1076 (9th Cir. 2006).  To establish the copying prong, a plaintiff must allege that the protected elements of the works are substantially similar. *Wild v. NBC Universal, Inc.*, 788 F.Supp. 2d 1083, 1098 (C.D. Cal. 2011), *affirmed by*, No. 11-56065, 2013 WL 750655 (9th Cir. Feb. 28, 2013).  In assessing substantial similarity, courts employ a two-part analysis—an "intrinsic" and "extrinsic" test. *Cavalier v. Random House, Inc.*, 297 F. 3d 815, 822 (9th Cir. 2002). The "extrinsic test" is an "objective comparison of specific expressive elements." *Id.* at 822-23. Courts only consider the extrinsic test when determining substantial similarity as a matter of law. *See Funky Films*, 462 F.3d at 1077.

Numerous courts in this Circuit have analyzed substantial similarity at the motion to dismiss stage. *See*, *e.g.*, *Wild*, 788 F.Supp. 2d at 1098, 1110 (granting defendant's motion to dismiss because the works were not substantially similar under Ninth Circuit copyright jurisprudence); *Mercado Latino, Inc. v. Indio Prods., Inc.*, No. CV 12-01027 DDP, 2013 WL 2898224, at *2 (C.D. Cal. June 12, 2013) (granting

1 defendant's motion to dismiss for lack of substantial similarity between protected
2 elements); *Kennedy v. Paramount Pictures*, No. 12cv372-WQH, 2013 WL 1285109,
3 at *1, 3-4 (S.D. Cal. Mar. 29, 2013) (granting defendant's motion to dismiss due to
4 lack of substantial similarity between protectable elements); *see also Mandeville-*
5 *Anthony v. The Walt Disney Co.*, No. CV 11-2137-VBF, 2012 WL 4017785, at *1-2
6 (C.D. Cal. July 28, 2012); *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1138-40 (D. Or.
7 2012).

### B. Plaintiffs' Claim for Direct Copyright Infringement Must Be Dismissed Because Plaintiffs Fail To State A Claim Upon Which Relief May Be Granted

#### 1. Plaintiffs Continue To Only Allege Defendants Infringed Upon Non-Protectable Elements of Their Artwork

Plaintiffs, after being generously granted another chance to articulate a viable claim against Defendants, continue to fail to state a claim. Despite being provided clear direction by the Court as to what constitutes a sufficiently pled claim of copyright infringement, Plaintiffs have not identified any protected elements of their Artwork upon which Defendants' advertisements allegedly infringe in their Amended Complaint.

"Copyright law only protects expressions of ideas, not the ideas themselves." *Cavalier,* 297 F. 3d at 823 (citing 17 U.S.C. § 102(b)). Indeed, "[t]he most fundamental axiom of copyright law is that '[n]o author may copyright his ideas.'" *Feist Publ'ns*, 499 at 344-45 (quoting *Harper & Row, Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 556 (1985)); *see also Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010) ("[O]thers may freely copy a work's ideas."). Furthermore, "elements of expression that necessarily follow from an idea, or expressions that are as a practical matter, indispensable or at least standard in the treatment of an idea are [also] not protected." *Games of Ariz., Inc. v. PV Onsite*, 561 F.3d 983, 988 (9th Cir.2009) (internal quotation and alteration omitted).

In *Satava v. Lowry*, the Ninth Circuit held that "no copyright protection may be afforded the idea of producing a glass-in-glass jellyfish sculpture or to the elements of expression that naturally follow from the idea of such a sculpture." 323 F. 3d 805, 810 (9th Cir. 2003). The court explained that the plaintiff could not prevent others from copying his depictions of jellyfish because one cannot "prevent others from copying elements of expression that nature displays for all observers." *Id.* at 812. While noting that the plaintiff's glass-in-glass jellyfish sculptures were "beautiful," the court found they merely "combine[d] several unprotectable ideas and standard elements" that are "the common property of all, and [the plaintiff could] not use copyright law to seize them for his exclusive use." *Id.* at 811.

Similarly, in *Erickson v. Blake*, the court dismissed the plaintiff's copyright infringement claim because the only common element between the plaintiff's and defendant's works was a shared concept or idea. 839 F. Supp. 2d 1139-41 (D. Or. 2012). The plaintiff in *Erickson* claimed the defendant infringed upon his musical work, which included the plaintiff playing musical notes based on the order of the digits of the number *pi*, because defendant published a YouTube video in which he also constructed a melody by playing musical notes based on the order of the digits of *pi*. *Id.* at 1134. The court noted that copyright law only protected the plaintiff's expression of his musical composition, such as "the cadence, flourishes, harmonies, structure, and so on," but it did not protect the plaintiff's idea of using *pi* to compose a musical work because "[*p*]*i* is a non-copyrightable fact, and the transcription of *pi* to music is a non-copyrightable idea." *Id.* at 1139-40. As such, the plaintiff "[could] not use his copyright to stop others from employing this particular pattern of musical notes." *Id.* at 1139.

Here, Plaintiffs' Amended Complaint fails to state a claim because Plaintiffs' have only identified unprotected elements as the parts of their Artwork upon which Defendants' have allegedly infringed. A review of the Amended Complaint shows that the purportedly copied elements are dictated by the natural properties of ferrofluid—

namely, ferrofluid creating a "pattern of spikes" in response to magnetic fields, (FAC ¶¶ 30-37, 58-60), the "reflective property of ferrofluid," (FAC ¶¶ 37, 41, 47), ferrofluid rising into a column in response to an overhead magnet, (FAC ¶ 42, 58-60), and a "pool of ferrofluid" when a magnet is not present. (FAC ¶¶ 37-38, 43, 45, 58-59.) Quite simply, these elements of Plaintiffs' work cannot form the basis of a copyright claim because they are not original to the Plaintiffs.[2]

Plaintiffs purport that they specifically "chose" these elements because they are "aesthetically pleasing." (*See* FAC ¶¶ 35-43.) However, as Plaintiffs' own exhibits show, it is evident that these "choices" are the result of the natural properties of ferrofluid—a magnetic liquid—responding to magnetic force. (*See*, *e.g.*, Ex. 29 to the FAC[3] (showing both similar "patterns of spikes" and the "reflective property of ferrofluid" in another artist's work); Ex. 23 (showing ferrofluid forming a column in response to a magnet in another artist's work).[4]) As the court in *Satava* highlighted, elements may be both aesthetically pleasing and naturally occurring. Indeed, artists may choose to utilize the naturally occurring properties of a medium or capture the naturally occurring elements of a subject because it is those naturally occurring elements that create the most appeal. However, that such elements are appealing does not mean that such elements are subject to copyright protection. As mentioned above, the court in *Satava* explained:

> [The plaintiff] may not prevent others from depicting jellyfish with tendril-like tentacles or rounded bells, because many jellyfish possess

---

[2] Plaintiffs own Complaint clearly demonstrates that what they seek is protection for the idea of using ferrofluid. Indeed, Plaintiffs on one hand allege that Defendants' copied Plaintiffs' work and in the same breath admit that "[t]he ferrofluid here flows very rapidly – too quickly for the camera to catch all of the movement (and consequently, too quickly to be accurately copied, reverse engineered and modeled by defendants." (FAC ¶38.) If the flow of ferrofluid from the pool to the magnet was not capable of being copied, the only thing Plaintiffs could be claiming is that Defendants copied the idea of ferrofluid flowing from a pool to a magnet, which is a natural response of ferrofluid to magnetic forces and not appropriate subject matter for copyright protection.
[3] All references to exhibits are those Plaintiffs submitted in connection with the FAC.
[4] The elements upon which Plaintiffs claim Defendants' infringed are merely natural properties of ferrofluid. *See*, *e.g.*, http://www.youtube.com/watch?v=4qV-0LMBPnk.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

> those body parts. He may not prevent others from depicting jellyfish in bright colors, because many jelly fish are brightly colored. He may not prevent others from depicting jellyfish swimming vertically, because jellyfish swim vertically in nature and are often depicted swimming vertically….[He] may not prevent others from depicting jellyfish within a clear outer layer of glass, because clear glass is the most appropriate setting for an aquatic animal.

323 F. 3d at 811. Similar to the lack of protection available for plaintiff's glass-in-glass jellyfish sculptures in *Satava*, Plaintiffs' cannot claim copyright protection over otherwise unprotectable elements of ferrofluid merely because such elements may be aesthetically pleasing.

Indeed, if Plaintiffs were granted protection over these elements, it would be impossible for any artist to create a work that shows the mechanical and functional reaction of spikes of ferrofluid emerging from a pool in response to magnetic fields. Plaintiffs cannot be allowed to so simply achieve copyright for an otherwise unprotectable process by embodying the process in a video or photo.[5] Copyright law cannot be extended to afford such protection. *See*, *e.g.*, *Dave Grossman Designs, Inc. v. Bortin*, 347 F. Supp. 1150, 1156-57 (N.D. Ill. 1972) ("Picasso may be entitled to a copyright on his portrait of three women painted in his Cubist motif. Any artist, however, may paint a picture of any subject in the Cubist motif, including a portrait of three women, and not violate Picasso's copyright so long as the second artist does not ***substantially copy*** Picasso's specific expression of his idea."). Therefore, because the allegedly infringed elements identified by Plaintiffs in their Artwork and in Defendants' advertising are not original, expressive elements, and thus Plaintiffs seek protection over the natural properties of ferrofluid, Plaintiffs claim for copyright infringement must be denied.

---

[5] 17 U.S.C.A. § 102(b) ("In no case does copyright protection ... extend to any idea, ***procedure***, ***process***, system, method of operation, ***concept***, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.") (emphasis added).

### 2. The Identified Elements of Plaintiffs' Artwork Are Not Virtually Identical Or Substantially Similar To Defendants' Advertisements

Even if the Court finds that Plaintiffs have identified protectable elements in their Artwork, the elements of Defendants' advertisements identified by Plaintiffs are neither virtually identical nor substantially similar to any allegedly protectable element of the Artwork. Accordingly, the Court should dismiss Plaintiffs' Amended Complaint as a matter of law. *Wild*, 788 F. Supp. 2d at 1090.

When employing the extrinsic test, "it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1134-35 (C.D. Cal. 2009) (citation omitted). "A court must take care to inquire only whether the **protectable elements, standing alone**, are substantially similar." *Cavalier*, 297 F. 3d at 822 (citation omitted). "Therefore, when applying the extrinsic test, the court must filter out and disregard the non-protectable elements in making its substantial similarity determination." *Id.*

The degree of copyright protection provided to an element depends on the range of expression of that element. *Mattel*, 616 F. 3d at 913-14. Where there is only a narrow range of expression, copyright protection is "thin" and a work must be "virtually identical" to infringe. *Id.* Conversely, where the range of expression is broad, a work will infringe if it is substantially similar. *Id.* For example, in *Satava*, the court noted the limited range of expression available when creating a work based on nature, such as depictions of jellyfish. 323 F. 3d at 812. Because there is no protection for the "expression that nature displays," the plaintiff was only entitled "narrow" copyright protection for variations in his works, such as the background, lighting, and perspective. *Id.* at 812-13. In such situations, the creator is entitled "thin copyright" that protects against "virtually identical copying," which the court in *Satava* found was not present in that case. *Id.* at 812.

Once the unprotected elements of a work are filtered out, the Court must compare the works ***as a whole*** to determine whether there is substantial similarity

1 between the protected elements of Plaintiffs' Artwork and Defendants'
2 advertisements. *See*, *e.g.*, *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435,
3 1443 (9th Cir. 1994) ("Because only those elements of a work that are protectable . . .
4 can be compared when it comes to the ultimate question of illicit copying, we use
5 analytic dissection to determine the scope of copyright protection before works are
6 considered '*as a whole*.'") (emphasis added); *Idema v. Dreamworks, Inc.*, 162 F.
7 Supp. 2d 1129, 1176 (C.D. Cal. 2001) ("The unprotectable elements have to be
8 identified, before the works can be considered *as a whole*.") (emphasis added).

9 Despite Plaintiffs' assertion that there is a "wide range of expression" available
10 with respect to the use of ferrofluid, (FAC ¶ 64), the medium is necessarily limited by
11 the natural properties of ferrofluid, *i.e.*, how the liquid responds to magnetic fields.
12 Accordingly, Plaintiffs' Artwork is only entitled thin copyright protection and
13 Defendants' advertisements must be virtually identical for Plaintiffs to state a claim of
14 copyright infringement. *Satava*, 323 F. 3d at 312.

15 After the unprotected elements of Plaintiffs' Artwork are filtered out, it is
16 apparent that the Artwork is not substantially similar to—let alone virtually identical
17 to—Defendants' advertisements. Indeed, there are significant differences in the
18 arrangement and selection of the allegedly expressive elements identified by Plaintiffs
19 themselves, including the pace of the videos and the movement of ferrofluid as well as
20 the background, lighting, and perspective in the two videos. To the extent there is any
21 similarity between the works otherwise, it is between unprotected elements when
22 viewed in isolation—not when the works are considered as a whole.

23 To begin, Defendants' choices regarding the background, lighting and
24 perspective in its Acura Oil Commercial are quite dissimilar to Plaintiffs' Artwork. In
25 the Amended Complaint, Plaintiffs claim Defendants' commercial are "virtually
26 identical, or in the alternative, at least substantially similar to the expression" of
27 Plaintiffs' Artwork because they both begin by "having a set of substantially vertical
28 spikes appear in [a] hexagonal pattern." (FAC ¶¶ 32, 33, 55.) However, once the

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

unprotected elements—spikes forming in a pool of ferrofluid in reaction to a magnetic field— are filtered out, it is evident that the expressive elements of Plaintiffs' and Defendants' respective works are neither identical nor substantially similar. For example, in Defendants' commercial, the viewer sees spikes emerge from a pool of ferrofluid at an overhead angle and then the commercial alternates between overhead and side views of the spike formation. (Folder C at 0:01-0:23.) Conversely, the viewer of Plaintiffs' Artwork sees spikes initially emerge from a horizontal angle. (Folder A at 2:27-2:30.) Additionally, the spikes in Defendants' advertisement form a perfectly circular pattern surrounded by ripples in ferrofluid while the spikes in Plaintiffs' Artwork form a "hexagonal pattern" with a rippling effect at the corners of the pool of ferrofluid. (*Compare* Folder C at 0:01-23 *with* Folder A at 2:27-257.) Finally, Defendants' commercial shows a magnet suspended from the ceiling and the pool of ferrofluid appears black in color. (Folder C at 0:01-0:23.) In Plaintiffs' Artwork, however, only the bottom edge of the magnet is visible and the pool of ferrofluid is bluish in color. (Folder A at 2:27-2:57.)

Moreover, a comparison of Plaintiffs' Artwork and Defendants' Acura Oil Commercial demonstrates that the pace of the two works and the movement of ferrofluid within them are quite different. The pace of Plaintiffs' video is fast. Spikes emerge from a pool of ferrofluid, rapidly rise and form a wide column with a spiked dome of ferrofluid at the top of the column. (*See* Folder A at 2:27-2:57.) There is no magnetic column visible in Plaintiffs' Artwork. (*Id.*) Additionally, shorter spikes of ferrofluid frantically rise and fall all around the column. (*Id*. at 2:35-2:45.) The column is stationary and lasts for almost twenty seconds before it slowly shrinks and lowers into the pool of ferrofluid. (*Id.* at 2:31-2:51.) There are also other patterns of spiked ferrofluid that form along the edges of the pool. (*Id.* at 2:27-2:57.)

The pace of Defendants' commercial, in contrast, is much slower and calmer. Spikes slowly rise out of a pool of ferrofluid and form a thin column in which the top spike stays at a certain distance from the magnet suspended from the ceiling as the

11
NOTICE OF MOTION AND MOTION TO DISMISS

1 spike formation is moved around the room until the top spike finally connects with the
2 magnet and the fluid flows up towards the magnet.  (*See* Folder C at 0:02-0:09.)
3 Plaintiffs even acknowledge the lack of similarity between their Artwork and
4 Defendants' commercial by noting "the artist may have changed magnet shapes for
5 this video."  (FAC ¶ 59.)  The column of ferrofluid moves slowly around the pool,
6 (Folder C at 0:08-0:16), which Plaintiffs admit "is something [that] does not happen in
7 [their Artwork]."  (FAC ¶ 61.)  The column flows up to the magnet for no more than a
8 few seconds before abruptly dropping and splashing into the pool.  (*See* Folder C at
9 0:17-0:23.)  The rest of the pool is flat during the video; there are no other patterns of
10 spiked ferrofluid anywhere in the pool. (*Id.* at 0:01-0:23.)  Whereas, in Plaintiffs
11 Artwork, ferrofluid does not fall from the magnet in a splashing manner, and there are
12 other patterns of ferrofluid in the pool visible at the same time as the spike formation.
13 (Folder A at 2:27-2:57.)
14    These differences in the pace and movement of ferrofluid show that the
15 allegedly expressive elements of Plaintiffs' and Defendants' works are neither
16 identical nor substantially similar.  Additional differences between the Artwork and
17 Defendants' advertising include the background, use of sound, and setting.  For
18 example, in Plaintiffs' Artwork is pool of ferrofluid in a container against a white
19 background, Defendants depict ferrofluid filling what could be a room in a large
20 home, with a skylight, archways, artistic moldings, and beige walls.  (*Compare* Folder
21 C at 0:02-0:24 *with* Folder A at 2:27-2:57.)  Further, the manner of sound and the
22 manner in which sound is used is distinctly different between Plaintiffs' Artwork and
23 Defendants' commercial. Indeed, almost every expressive element of Plaintiffs'
24 Artwork and Defendants' advertising is distinctly different.
25    Other similarities alleged by Plaintiffs (*see*, *e.g.*, FAC ¶¶ 30, 43, 47-48, 51-52),
26 are inappropriate and irrelevant because they are based on still images taken from
27 Plaintiffs' and Defendants' videographic work, some of which have been zoomed in
28 on.  For Plaintiffs' to attempt to compare elements of the still images only in isolation

*Winston & Strawn LLP*
*333 S. Grand Avenue*
*Los Angeles, CA 90071-1543*

as opposed to the elements within the works as a whole is not in accordance with the type of protection that is afforded by copyright law. It is clear that the standard in the Ninth Circuit is that the works must be compared "as a whole." *Apple Computer*, 35 F.3d at 1443. When viewed as a whole, it is clear that even when comparing the allegedly protected elements of Plaintiffs' Artwork to Defendants' advertising, no substantially similarity exists.

Because Plaintiffs' Artwork is only afforded narrow copyright protection, these differences show that Defendants' advertisements do not infringe the original expression of the protected elements of Plaintiffs' work.

### C. Because Plaintiffs' Direct Copyright Infringement Claim Must Be Dismissed, the Remainder of the Complaint Should Be Dismissed

The sole jurisdictional basis alleged for Plaintiffs' Complaint is the allegation of a fatally defective claim of direct copyright infringement. If the direct copyright infringement claim is dismissed, the remaining claims for inducement of copyright infringement, contributory copyright infringement, and vicarious copyright infringement also must be dismissed as direct copyright infringement is an essential element of each such cause of action. *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1031 (9th Cir. 2013) ("It is well-established that '[s]econdary liability for copyright infringement does not exist in the absence of direct infringement.'") (quoting *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 101 n. 2 (9th Cir. 2001)).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint against Defendants should be dismissed with prejudice for failure to state a claim pursuant to Rule 12(b)(6).

Dated: August 9, 2013 　　　　　　　　　　WINSTON & STRAWN LLP

By: /s/ Stephen R. Smerek
　　　Stephen R. Smerek
　　　Monique N. Bhargava
　　　Stephanie M. Leonard
　　　Attorneys for Defendants
　　　RUBIN POSTAER AND ASSOCIATES
　　　and AMERICAN HONDA MOTOR CO.,
　　　INC.