O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SACHIKO MUROMURA, | ) | Case No. CV 12-09263 DDP (AGRx) |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| RUBIN POSTAER AND ASSOCIATES, a California corporation; AMERICAN HONDA MOTOR CO., INC., a Delaware corporation, | ) ) ) ) ) ) | [Dkt. No. 31] |
| Defendants. | ) ) | |

　　Presently before the court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. Having considered the submissions of the parties, the court grants the motion and adopts the following order.

**I.　Background**

　　Plaintiff Sachiko Muromura creates artistic works using a magnetic fluid ("ferrofluid"). (First Amended Complaint ("FAC") ¶ 8.) Muromura makes ferrofluid sculptures, takes photographs and videos of the sculptures, and often projects images of the sculptures onto a screen. (Id.) Among Muromura's artistic creations is an audiovisual work entitled "Protrude Flow, 2001,"

1  which she created in collaboration with Plaintiff Minako Takeno and
2  registered with the United States Copyright Office.  (Id. ¶¶ 1, 9.)
3  The work does not readily lend itself to written description, but
4  generally depicts ferrofluid forming a series of patterns in
5  response to magnets.  Plaintiffs also registered certain still
6  photographic slides from "Protrude, Flow" with the Copyright
7  Office.[1]  (Id. ¶ 30.)  The "Protrude Flow, 2001" video, and stills
8  from the movie, were displayed at a computer graphics exhibition in
9  Los Angeles in 2001.  (Id. ¶ 10.)
10       Defendant Rubin Postaer and Associates ("RPA") is an
11 advertising agency that does work for Defendant American Honda
12 Motor Company ("Honda").  (FAC ¶¶ 2, 5.)  In 2009, an RPA employee
13 asked Muromura ("Plaintiff") if any of her ferrofluid artworks were
14 available for a multi-city tour highlighting Honda's use of
15 ferrofluids in its vehicles.  (Id. ¶ 12.)  Plaintiff provided RPA
16 with a link to her website, which included images and video of
17 "Protrude Flow, 2001."  (Id.)  RPA ultimately rented one of
18 Plaintiff's two available works, and paid Plaintiff a $10,000
19 rental fee.  (Id. ¶ 13.)
20       In March 2010, people familiar with Plaintiff's work informed
21 her that a division of Honda was using images of her ferrofluid art
22 in its advertisements.  (FAC ¶ 14.)  RPA assured Plaintiff that her
23 works were not featured in the ads, but offered Plaintiff a $10,000
24 "creative consultant fee."  (Id. ¶ 17.)  Plaintiff then filed this
25 copyright infringement action against RPA and Honda.  Defendants
26 now move to dismiss the First Amended Complaint.

---

28   [1]  The complaint identifies only a single photograph included in this registration.  (FAC ¶ 30, Ex. 5.)

2

## II. Legal Standard

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." <u>Id.</u> at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. <u>Id.</u> at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." <u>Id.</u> at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." <u>Twombly</u>, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

**III. Discussion**

To state a claim for copyright infringement, a Plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). To satisfy the copying prong, a copyright plaintiff must also allege that the works are substantially similar in their protected elements. Wild v. NBC Universal, Inc., 788 F.Supp.2d 1083, 1098 (C.D. Cal. 2011). Courts in this circuit regularly apply these requirements at the pleading stage. See, e.g., Wild 788 F.Supp.2d at 1098; Lafarga v. Lowrider Arte Magazine, No. SACV 11-1501 DOC, 2012 WL 3667441 at *3 (C.D. Cal. Aug. 24, 2012); Minden Pictures, Inc. v. Pearson Education, Inc., No. C 11-05385 WHA, 2012 WL 1595081 at *2 (N.D. Cal. May 4, 2012); Fractional Villas, Inc. v. Tahoe Clubhouse, No. 08cv1396-IEG, 2009 WL 160932 at *2 (S.D. Cal. Jan. 22, 2009).

To determine whether works are substantially similar, courts in this circuit apply a two-part analysis, including an "extrinsic test," or objective comparison of specific expressive elements. Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002). Copyright protection does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery." 17 U.S.C. § 102(b). Therefore, "elements of expression that necessarily follow from an idea, or expressions that are as a practical matter, indispensable or at least standard in the treatment of an idea are [also] not protected." Dream Games of Arizona, Inc. v. PV Onsite, 561 F.3d 983, 988 (9th Cir. 2009) (internal quotation and alteration omitted); see also Satava v.

4

1  Lowry, 323 F.3d 805, 810 (9th Cir. 2003) ("Similarly, expressions
2  that are standard, stock, or common to a particular subject matter
3  or medium are not protectable under copyright law.") (emphasis
4  added).  When applying the extrinsic test of substantial
5  similarity, courts must "filter out and disregard the non-
6  protectable elements" and look only at those elements that are
7  protected.  Cavalier, 297 F.3d at 822-23.
8       Defendants argue that the FAC fails to identify any original,
9  protectable elements in "Protrude, Flow 2001," and that the
10 combination of unprotectable elements in Plaintiffs' work and
11 Defendants' advertisements are not similar.  The court agrees.
12      Plaintiffs' opposition refers to several elements of Protrude,
13 Flow, but does not attempt to distinguish between elements that are
14 protectable and those that are not.  Instead, Plaintiff repeatedly
15 asserts that Defendants copied certain elements, such as "mood,
16 scale, lighting, story line, pace, and so on."[2]  (Opp. at 13.)
17 Plaintiffs also refer to alleged copying of "mountain shapes" and
18 "the speed that the fluid moves, the shape of the spikes, the
19 density of the spikes, and the way the spikes flow into each
20 other," as if to suggest that those elements are protectable.  The
21 FAC itself identifies a "pattern of spikes growing upwards . . .
22 [and] combining together," a "flat pool of ferrofluid," angled
23 spikes, rapidly-flowing ferrofluid, "bright and silvery colored"
24 ferrofluid, a thin column of ferrofluid rising to meet and

---

[2] At least some of these assertions directly contradict the FAC.  (See FAC ¶ 57 ("[T]he color lighting was not copied by RPA/Honda . . . .").)

spreading across a magnet, and the "reflective property of ferrofluid." (FAC ¶¶ 35-41.)

In <u>Satava v. Lowry</u>, a plaintiff copyrighted several glass sculptures of jellyfish within a glass dome. <u>Satava</u>, 323 F.3d at 807. The Ninth Circuit held that copyright protection did not apply to the idea of a jellyfish sculpture and, therefore, also could not apply to natural characteristics of jellyfish such as bright colors, tendril-like tentacles, and rounded bells. <u>Id.</u> at 810-11. The <u>Satava</u> court recognized that a particular, original combination of unprotected elements might be protectable, as might the plaintiff's artistic decisions "not governed by jellyfish physiology," but that contributions of that sort, such as the arrangement of hues and distinctive curl of a tendril, were entitled only to "thin" copyright protection against only "virtually identical" copying. <u>Id.</u> 323 F.3d 805; <u>See also</u>, <u>Craig Frazier Design, Inc. v. Zimmerman Agency LLC</u>, No. C 10-1094 SBA, 2010 WL 3790656 at *5-6 (N.D. Cal. Sept. 27, 2010) (finding particular style and shading of a drawing of a duck's bill did not necessarily flow from duck physiology).

Here, Plaintiff appears to lay claim to a natural property of ferrofluid more fundamental than even the shape of the jellyfish at issue in <u>Satava</u>. Ferrofluid naturally responds to magnetic fields, and its shape will vary in accordance with the magnetic field to which it is exposed. While Plaintiff argues in opposition that there are factual issues regarding the properties of ferrofluid, that argument contradicts the plain allegations of the FAC, which

states that "[f]errofluid responds to magnetic fields, and artists can control ferrofluid by using magnetic fields."[3] (FAC ¶ 20.) The spikes, pools, columns, and flows of ferrofluid Plaintiff identifies as protectable expressive elements are but artifacts of the medium's magnetism. Ferrofluid's behavior in the presence of a magnet is no more copyrightable than an icicle's response to heat or a pond's reaction to a skipped pebble.

Stripping out, then, the non-protectable natural qualities of ferrofluid, the only elements that remain are Plaintiff's artistic choices with respect to mood, setting, pace, sequence of events, colors, and materials. (FAC ¶ 55; Opp. at 13.) Plaintiff asserts that an "Acura Oil Commercial" infringes upon these elements.[4] As an initial matter, the FAC itself acknowledges that Defendants did <u>not</u> copy some of these elements. FAC ¶ 57 ("[T]he color lighting was not copied by RPA/Honda . . . ."). "Protrude, Flow" is, for the most part, zoomed in very close to the ferrofluid, which is contained in a featureless, white container and bathed first in purple light, then shown in black and white. "Protrude, Flow" either cuts the magnet out of the frame entirely or shows a tiny sliver of a magnet from a fluid-level perspective before cutting to images of people manipulating ferrofluid. The Acura Oil commercial

---

[3] Though Plaintiff attempts to avoid dismissal by alleging that "[n]ot all ferrofluid produces spikes when exposed to magnetic fields," that allegation ignores not only the FAC's other allegations, but also the reality that the location and strength of a magnetic field will affect ferrofluid's shape, and implicitly acknowledges that some ferrofluid naturally <u>does</u> produce spikes.

[4] The FAC does not allege that other allegedly infringing works duplicate these particular elements. The only elements identified with respect to those works are unprotectable.

takes place in an empty residential room with a large skylight, prominently features a large magnet moving across the room on a heavy frame, and depicts ferrofluid from a variety of perspectives and distances with quick cuts. Defendants' alleged infringing work is not substantially similar, let alone virtually identical, to Protrude, Flow.

### IV. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED, with leave to amend. Any amended complaint shall be filed within fourteen days of the date of this order.

IT IS SO ORDERED.

Dated: September 16, 2014

DEAN D. PREGERSON
United States District Judge