O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SACHIKO MUROMURA,                    )   Case No. CV 12-09263 DDP (AGRx)
                                     )
                 Plaintiff,          )
                                     )   **ORDER GRANTING DEFENDANTS' MOTION**
          v.                         )   **TO DISMISS**
                                     )
RUBIN POSTAER AND                    )
ASSOCIATES, a California             )
corporation; AMERICAN HONDA          )
MOTOR CO., INC., a Delaware          )
corporation,                         )
                                     )
                 Defendants.         )   [Dkt. No. 46]
                                     )
_____        )

     Presently before the court is Defendants' Motion to Dismiss
Plaintiff's Second Amended Complaint.  Having considered the
submissions of the parties and heard oral argument, the court
grants the motion and adopts the following order.

**I.   Background**

     As discussed in this court's prior orders, Plaintiff Sachiko
Muromura creates artistic works using a magnetic fluid
("ferrofluid").  (Second Amended Complaint ("SAC") ¶ 15.)  Muromura
makes ferrofluid sculptures, takes photographs and videos of the
sculptures, and often projects images of the sculptures onto a

screen.  (Id.)  Among Muromura's artistic creations is an
audiovisual work entitled "Protrude Flow" which she created in
collaboration with Plaintiff Minako Takeno.[1]  (Id. ¶ 16.)  Muromura
subsequently created and copyrighted an audiovisual work entitled
"Protrude Flow, 2001."  (Id. ¶¶ 17-18.)  The work does not readily
lend itself to written description, but generally depicts
ferrofluid forming a series of shapes and patterns in response to
magnets.  The "Protrude Flow, 2001" video, and still images from
the movie, were displayed at a computer graphics exhibition in Los
Angeles in 2001.  (Id. ¶ 17.)

Defendant Rubin Postaer and Associates ("RPA") is an
advertising agency that did work for Defendant American Honda Motor
Company ("Honda").  (SAC ¶ 19.)  In 2009, an RPA employee asked
Muromura (hereinafter, "Plaintiff") if any of her ferrofluid
artworks were available for a multi-city tour highlighting Honda's
use of ferrofluids in its vehicles.  (Id.)  Plaintiff provided RPA
with a link to her website, which included images and video of
"Protrude Flow, 2001."  (Id.)  RPA ultimately rented one of
Plaintiff's two available works and paid Plaintiff a $10,000 rental
fee.  (Id. ¶ 20.)

In March 2010, people familiar with Plaintiff's work informed
her that a division of Honda was using images of her ferrofluid art
in its advertisements.  (SAC ¶ 21.)  RPA assured Plaintiff that her
works were not featured in the ads, but offered Plaintiff a $10,000
"creative consultant fee."  (Id. ¶ 24.)  Plaintiff then filed this

---

[1] Muromura alleges that nine photographs of the original
"Protrude Flow" works were copyrighted, though the Copyright Office
cannot locate deposit copies.  (SAC ¶ 8; Ex. 2.)

copyright infringement action against RPA and Honda.  This court
granted Defendants' motions to dismiss both the original and First
Amended Complaint, both times with leave to amend.  Defendants now
move to dismiss the Second Amended Complaint.

## II.  Legal Standard

A complaint will survive a motion to dismiss when it contains
"sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,
570 (2007)).  When considering a Rule 12(b)(6) motion, a court must
"accept as true all allegations of material fact and must construe
those facts in the light most favorable to the plaintiff." Resnick
v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint
need not include "detailed factual allegations," it must offer
"more than an unadorned, the-defendant-unlawfully-harmed-me
accusation."  Iqbal, 556 U.S. at 678.  Conclusory allegations or
allegations that are no more than a statement of a legal conclusion
"are not entitled to the assumption of truth." Id. at 679.  In
other words, a pleading that merely offers "labels and
conclusions," a "formulaic recitation of the elements," or "naked
assertions" will not be sufficient to state a claim upon which
relief can be granted.  Id. at 678 (citations and internal
quotation marks omitted).

"When there are well-pleaded factual allegations, a court should
assume their veracity and then determine whether they plausibly
give rise to an entitlement of relief." Id. at 679.  Plaintiffs
must allege "plausible grounds to infer" that their claims rise
"above the speculative level." Twombly, 550 U.S. at 555.

1  "Determining whether a complaint states a plausible claim for

2  relief" is a "context-specific task that requires the reviewing

3  court to draw on its judicial experience and common sense."  Iqbal,

4  556 U.S. at 679.

5  **III. Discussion**

6       A Plaintiff bringing a copyright infringement claim must

7  adequately allege "(1) ownership of a valid copyright, and (2)

8  copying of constituent elements of the work that are original."

9  Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361

10 (1991).  To satisfy the copying prong, a copyright plaintiff must

11 also allege that the works are substantially similar in their

12 protected elements.  Wild v. NBC Universal, Inc., 788 F.Supp.2d

13 1083, 1098 (C.D. Cal. 2011).  The key issue in this case, at this

14 stage, is whether the elements Defendants allegedly copied are

15 protectable in the first instance.

16      To determine whether works are substantially similar, courts

17 in this circuit apply a two-part analysis comprised of an objective

18 "extrinsic test" and a subjective "intrinsic" test.  Cavalier v.

19 Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002). The

20 intrinsic test is left to the jury.  Id. at 484.  In conducting the

21 extrinsic test, courts must make an objective comparison of

22 specific expressive elements.  Cavalier, 297 F.3d at 822.  Such a

23 comparison may require an "analytical dissection" of a particular

24 work.  Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th

25 Cir. 2000).  As the Ninth Circuit has acknowledged, "the extrinsic

26 test provides an awkward framework to apply to copyrighted work

27 like music or art objects . . . ."  Swirsky v. Carey, 376 F.3d 841,

28

848 (9th Cir. 2004).  Nevertheless, the test is applicable to such works.  Id.

It is the plaintiff's burden to initially identify specific, objective elements.  Three Boys, 212 F.3d at 485.  The court's analytical dissection must, however, distinguish between protected and unprotected elements in the work.  Swirsky, 376 F.3d at 845. "[W]hen applying the extrinsic test, a court must filter out and disregard the non-protectible elements in making its substantial similarity determination."  Cavalier, 297 F.3d at 815.  As explained in this court's prior orders, copyright protection does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery."  17 U.S.C. § 102(b). Therefore, "elements of expression that necessarily follow from an idea, or expressions that are as a practical matter, indispensable or at least standard in the treatment of an idea are [also] not protected."  Dream Games of Arizona, Inc. v. PV Onsite, 561 F.3d 983, 988 (9th Cir. 2009) (internal quotation and alteration omitted); see also Satava v. Lowry, 323 F.3d 805, 810 (9th Cir. 2003) ("Similarly, expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law.") (emphasis added); see also Swirsky, 376 F.3d at 850 ("[W]hen certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are . . . not protected by copyright.").

In this vein, as the Satava court explained, objective facts are not copyrightable.  Satava, 323 F.3d at 810.  The court therefore held that a sculptor of jellyfish artworks could not copyright such naturally-dictated elements as bright colors,

5

1   tentacles, vertical swimming orientation, clear glass
2   representative of water, or other elements typical of jellyfish in
3   nature.  Id. at 811-12.  While the court recognized that some
4   artistic choices derived from nature, such as the particular curl
5   of a jellyfish's tendril, might be entitled to some copyright
6   protection, it explained that, given the limited range of possible
7   expressions of curled tendrils, such an element would be entitled
8   to only "thin" protection from only "virtually identical copying."
9   Id.  Even unprotectable elements, however, may gain some protection
10  in combination with each other.  Specific combinations of
11  unprotectable elements may be copyrightable, provided that the
12  elements combined "are numerous enough and their selection and
13  arrangement original enough that their combination constitutes an
14  original work of authorship."  Id. at 810.

15      In this case, the court concluded that previous iterations of
16  Plaintiffs' complaint impermissibly attempted to lay claim to
17  fundamental properties of ferrofluid, such as its tendency to pool,
18  flow, or react to the presence of a magnet.  The court therefore
19  found such elements to be either unprotectable or, at best, worthy
20  of only thin protection.[2]  Now, with their lengthier Second Amended
21  Complaint, Plaintiffs include additional visual exhibits and
22  additional, more detailed descriptions of the works and elements at
23  issue.

24

25

26      [2] Plaintiffs' First Amended Complaint suffered from a degree
27  of imprecision regarding the works, let alone elements, at issue,
    as evinced by Plaintiffs' identification of only a single still
28  photograph, in addition to the Protrude, Flow 2001 audiovisual
    work.

1    Plaintiffs' Second Amended Complaint, however, continues to
2    suffer from a lack of clarity regarding the protectable elements
3    reflected in Plaintiffs' works.  At a general level, Plaintiffs
4    provide extensive lists of descriptors and elements characterizing
5    their works, but at the same time allege that "[t]hese
6    articulations of the objective manifestations of Plaintffs'
7    expression are provided, without limitation, as examples to
8    demonstrate sufficient objective similarities . . . ."  (SAC ¶ 34).
9    With respect to specific photographs, Plaintiffs allege that
10   "[s]ome of the objective manifestations of the creative expression
11   that were copied by Defendants include the slope of the mountain
12   [shape], the density of spikes on the mountain, the way the spikes
13   protrude vertically . . ., the shape of the spikes, the horizon
14   line . . ., the mood of the pieces . . . and the open air
15   environment."  (SAC ¶ 45.)
16   Such allegations, however, put the cart before the horse.
17   Plaintiffs cannot merely allege that Defendants' works share
18   certain elements with Plaintiffs' works.[3]  The threshold question
19   is whether any elements, or combinations of elements, are
20   protectable in the first instance.  Plaintiffs skip ahead to a
21   description of "some" of the elements present in both works without
22   first identifying any elements or particular combination of
23   elements worthy of protection.  Many of the individual expressions
24   identified, such as "mood," with no further elaboration, are not
25   the type of objective elements that the extrinsic test requires.
26
27   _____

28        [3] Plaintiffs acknowledge that their claims do not depend on
     the actual use of ferrofluid, and apply regardless of medium to any
     depiction of the elements described in the SAC, such as they are.

1    Plaintiffs may not avoid their burden to identify protectable

2 elements by alleging, as they do, that discovery will do so. (E.g.,

3 "Plaintiffs contend that discovery will support their claim that

4 [a] hexagonal image of small vertical protrusions is copyrightable

5 expression . . . ." (SAC ¶ 62.))  Even if such descriptions were

6 sufficient to adequately identify a protectable combination of

7 elements, the SAC muddies the waters by alleging that the exhibits

8 described are intended only "as a few examples that serve to

9 demonstrate that Defendants (sic) works are extrinsically similar

10 to Plaintiffs' work . . . ." (SAC ¶ 56.)  With such vague and

11 qualified allegations, it is difficult for this court determine the

12 set of elements, whether individually or as a combination, to which

13 Plaintiffs stake a claim.  Because Plaintiffs have failed to meet

14 their burden to identify specific, objective, protectable elements,

15 the SAC must be dismissed.

16 **IV.  Conclusion**

17    For the reasons stated above, Defendants' Motions to Dismiss

18 are GRANTED.  The Second Amended Complaint is DISMISSED, with

19 prejudice.

20

21

22 IT IS SO ORDERED.

23

24

25 Dated: April 15, 2015

26                                    DEAN D. PREGERSON
                                     United States District Judge

27

28

8